UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 13-23766 (KMW)

DAVID SCHULMAN as Personal Representative
of the Estate of Casey Schulman, deceased,

       Plaintiff,

v.

INSTITUTE FOR SHIPBOARD EDUCATION
d/b/a Semester at Sea, ANCHORAGE HOTEL LTD,
GLOBAL CITIZENS TRAVEL, LLC, and
FOUNTAINE–PAJOT S.A., a foreign company

       Defendants.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS[1]

       Plaintiff, David Schulman, as Personal Representative of the Estate of Casey Schulman, deceased, pursuant to Local Rule 7.1 files this response in opposition to Defendant, Fountaine-Pajot, S.A.'s ("FP") motion to dismiss [D.E. 29] and [D.E. 51] as follows:

1. On October 17, 2013, Plaintiff filed a Complaint [D.E. 1] against, among others, FP.

2. On February 7, 2014, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction [D.E. 29]. On March 3, 2014, Plaintiff filed his Amended Complaint [D.E. 42]. On March 25, 2014, Defendant, FP, renewed and reincorporated their motion to dismiss for lack of personal jurisdiction [D.E. 51].

3. The crux of Defendant's motion to dismiss is that this Court cannot exercise personal jurisdiction over it because another court in the Southern District of Florida has already found that it could not exercise personal jurisdiction over FP and that decision was

_____

[1] Plaintiff respectfully requests oral argument pursuant to Local Rule 7.1

1

affirmed by the Eleventh Circuit Court of Appeals.  See *Bluewater Trading LLC v. Fountaine-Pajot, S.A.*, Case No. 07-61284 (S.D. Fla. 2008), *aff'd* No. 08-16824 (11th Cir. 2009).  In further support of their motion, Defendant relies on *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011) and *Daimler A.G. v. Bauman, et. al.* 134 S.Ct. 746 (2014).  Finally, FP asserts that Plaintiff did not properly serve it under Fed. R. Civ. P. 12(b)(5).

4. As argued fully below, Defendant's motion is due to be denied for the following reasons: 1) Defendant is subject to personal jurisdiction under Florida's Long Arm Statute (Fla. Stat. § 48.193(1)(a)(1); 2) Defendant is subject to the jurisdiction of the courts of this state, pursuant to Fla. Stat. 48.193(2) because it is engaged in substantial and not isolated activity within this state; 3) Defendant is conclusively presumed to be doing business in the state pursuant to Fla. Stat. § 48.181(3); 4) FP has such systematic and continuous affiliations within the State of Florida that exercising jurisdiction over it does not offend traditional notions of fair play and substantial justice; 5) Initially, Plaintiff served Florida Yacht Group as an agent of Fountaine-Pajot.  FP has also now been served through the Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters ("Hague Convention").

## **INTRODUCTION**

Despite Defendant's assertion to the contrary, the facts surrounding this case merit consideration.  On December 1, 2012, Casey Schulman, a vibrant twenty-two year old woman lost her life as a result of being struck with the propeller blades of a Fountaine-Pajot designed and manufactured catamaran.  Since her death, FP continues to place into the stream of commerce the very same design that caused Ms. Schulman's death.  Specifically, FP places into

the stream of commerce vessels whose propellers remain designed so as to cause the very same injuries that caused Ms. Schulman's death. FP continues to market and sell these boats in the United States and specifically Florida.

## <u>MEMORANDUM OF LAW AND ARGUMENT</u>

The determination regarding whether the Court may exercise personal jurisdiction of FP requires a two step inquiry. First, the Court must determine whether personal jurisdiction exists under Florida's Long Arm Statute. See, *Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) [citations omitted]. Second, this Court must determine whether exercising personal jurisdiction over FP violates the Due Process Clause of the Fourteenth Amendment. *Meier ex. rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1268-69 (11th Cir. 2002).

## I. <u>FLORIDA'S LONG ARM STATUTE AUTHORIZES PERSONAL JURISIDICTION OVER FOUNTAINE-PAJOT</u>

There is no dispute that FP is a French company with its principal place of business located in France. However, FP has not and could not dispute Plaintiff's allegations regarding the systematic and continuous business conducted in Florida by FP. See Def. M. Dismiss [D.E. 29] at p. 2 ("For the purposes of this motion, Fountaine-Pajot accepts the allegations in Plaintiff's complaint.") See Amended Complaint [D.E. 42] at ¶ 17-24.

Fla. Stat. § 48.193(1)(a) states in relevant part: "A person...who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself...to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts: 1. Operating, conducting, engaging in, or carrying on a business venture in this state..."

Fla. Stat. § 48.181(3), Florida's statute relating to service of process states: "Any person,

3

firm or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any person, firm or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in or carrying on a business or business venture in this state."

## A. Fountaine-Pajot Sells Boats, Honors its Warranty and Sells Parts in Florida

"In order to make a finding of minimum contacts with the state, the contacts must involve some purposeful availment 'of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006) citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)

## i. Florida Yacht Group and Similar Florida Boat Dealers

It is undisputed that FP sells boats into Florida through various dealers. There are approximately six dealers, at least four of which sell boats in Florida, who are licensed to sell FP boats.[2] See Dep. D. Sell, 10:18-21. (Exhibit 1) See also Ex. 6-8, Dep. D. Sell  Accordingly, FP engages in business pursuant to Fla. Stat. 48.181(3).

David Sell is the owner of Florida Yacht Group[3] ("FYG"). FYG was an authorized dealer for the Southeast United States including Florida, Georgia, Alabama, Mississippi and South Carolina. Dep. D. Sell, 10:5-16. From Florida, FYG receives sales leads and close sales for FP boats. The contract between FP and FYG was signed in Florida. Dep. D. Sell, 16:17-22. FYG only has offices in Florida, meaning that it conducted all sales for the Southeast territory

---

[2] Florida Yacht Group, Denison New Yacht Sales Inc., The Catamaran Company, Dream Yacht Charters
[3] Florida Yacht Charters & Sales, Inc. d/b/a Florida Yacht Group.  As of March 2014, Denison Yacht Sales, also located in Florida has taken over FYG's territory.  Denison New Yacht Sales, Inc. is located in Fort Lauderdale, Florida.

from Florida.  A potential buyer, depending on her location, would be routed based on location to the dealer authorized to sell for that region.  Dep. D. Sell, 22:5-24.  Because FP encourages its dealers to sell anywhere, Atlantic Cruising Yachts, the mid-atlantic region FP dealer, sells as many (or more) boats into Florida as FYG.  Dep. D. Sell, 23:6-21.  Atlantic Cruising Yachts has sold numerous boats in the State of Florida.  Dep. D. Sell, 24:1-6.

In 2011 FP projected that at least $2.5 million in sales was possible by FYG.  Dep. D. Sell, 25:21-25; 26:1-6.  FYG bought a boat directly from FP in 2011 for $550,000.00.  This boat was used to show to customers in order to generate sales.  Dep. D. Sell, 26:13-15; 26: 17-25.  In 2012, FYG sold approximately $1.2 million and in 2013, FYG sold $2 million worth of FP boats. In the first three months of 2014, FYG has approximately $1.5 million in sales of FP boats.  Dep. D. Sell, 26:24-25; 16:25; 27:1; 27:6-8.  Atlantic Cruising Yachts has equaled or exceeded FYG's sales during the period of 2009 through the present in Florida (including The Bahamas territory). Prior to its relationship with FYG, FP was represented in Florida by the now defunct Wilmar. Dep. D. Sell, 27:18-25; 28:1-5; 28:6-16.

FP markets its products in Florida boating magazines as well as national trade magazines. Dep. D. Sell, 29:12-25; 30:10-18.  According to Mr. Sell's rough estimate FP's nationwide sales in 2012 were approximately $10 million.  Dep. D. Sell, 31:5-17.  Between FYG and Atlantic Cruising Yachts, anywhere from 10-20% of FP boats are sold in Florida.  Dep. D. Sell, 32:4-11. All money for boats sold in Florida by FYG is paid in Florida and collected by FYG to be wired to FP.  Those funds are held in escrow in Florida and then wired to Credit Agricole, a French bank with a Miami branch.  Dep. D. Sell, 35:6-25; 36:3-15.  FYG Bank Acct. Summary Ex. 6, Dep. D. Sell.  Credit Agricole is one of the largest European banks in the world with offices in Miami and Nassau.  See Credit Agricole web printout, www.ca-miami.com/en/credit-agricole-

miami/private-banking-network. (Exhibit 2)

FP further markets its boats in the United States and Florida through various magazines. See FP Response to Pls. RFP #10. (Exhibit 3)[4]

FP uses Florida third party vendors for outfitting its boats once they reach the United States. Dep. D. Sell, 38:21-25; 39:1-12. FYG has placed FP sold boats into its charter fleet and placed insurance on those boats using Florida insurance brokers. Dep. D. Sell, 40:21-25; 41:1. FP honors most if not all of its warranties through FYG in Florida either directly or by a third party, also in Florida. Dep. D. Sell, 45:13-25; 46:1-7. FP invoices FYG directly for any repair parts to its boats in Florida. Dep. D. Sell, 50:6-22; Ex. 13.

Finally, FP year after year attends the Miami International Boat show. Dep. D. Sell, 51:8-11; 52:16-17 ("The place to sell sailing catamarans is at the Miami Boat show"); and 53:15-20. FP's dealers from all over the country come to the Miami Boat show to work the FP booth. FP, itself, sends representatives every year to the Miami International Boat Show. Dep. D. Sell, 54:1-25; 57:7-25; 58:1-9. FP contracts with the National Marine Manufacturers Association which conducts the Miami International Boat Show every year since at least 2008. See NMMA show guides, contract with FP and Invoice. (Composite Exhibit 4)

FYG is not the only dealer in Florida with which FP has contracted to sell its boats. Denison Yacht Sales and Dream Yacht Charters both in Broward County also sell FP boats. Dep. D. Sell, 62:10-25 and Dep. J Carruth, 80:11-14.

**ii. CGI Finance Inc., Exclusive Global Lender for FP Boats in Florida and the United States**

Plaintiff deposed Jody Carruth, CFO of CGI Finance Inc.. CGI Finance Inc is a Maryland based marine lender. FP contracted with CGI Financing Inc. ("CGI") to be its

---

[4] Due to file size limits for electronic filing, Exhibit 3 will be filed in two parts as Exhibit 3a and 3b. Combined, they are Plaintiff's Exhibit 3 to this response.

"exclusive global financing" solution.  See Dep. J. Carruth, 25:9-15[5].  CGI considers FP to be a "major player" in the boating industry.  Dep. J. Carruth, 28:1-14.  CGI provides marine financing for FYG and other Florida purchasers.  Dep. J. Carruth, 16:10-12; Ex. 11.  The contract between FYG and CGI was negotiated based on the agreement between FP and CGI, and buyers in Florida received financing for FP boats through CGI.  Dep. J. Carruth, 22:1-13; 26:1-15; and Ex. 11.  CGI served as FP's sole provider for financing and only lent money for boats that are located within the United States.  Dep. J. Carruth, 27:3-17.  CGI further assisted FP in promoting sales to its Florida dealers as well as other dealers in the United States.  Dep. J. Carruth, 42:4-7; 42:14-21; 43:1.  CGI provided incentives to dealers including Florida based FYG for the sale of FP boats.  Dep. J. Carruth, 48:6-17  Once CGI entered into its agreement with FP, CGI acts on FP's behalf to secure financing for FP boats.  Dep. J. Carruth, 52:7-12.  FP further represents as a condition of financing by CGI that its vessels will comply with Florida regulatory requirements. Dep. J. Carruth, 54:1-13.  CGI entered into a loan program with FYG for FP boats.  Pursuant to FP's program, CGI has extended a $500,000 credit limit available to FYG and $850,000.00 to Denison New Yachts Inc., another Florida dealer.  Dep. J. Carruth, 74:7-21; 75:1-11; 80:11-14; 81:1-2.  Florida was the destination for more boats that have been financed through CGI than any other destination.  See Dep. J. Carruth, 91:1-3; 103:15-21 and Ex. 11.  Aeroyacht Ltd., a New York dealer, also sold at least one FP boat in Florida in 2008.  See Aeroyacht Ltd/FP Builder's Certification.  (Exhibit 6)[6]

While the volume of sales of FP boats is not numerically high, CGI still considers FP a major player in the boating industry.  Moreover, FP, as a luxury goods manufacturer, produces

---

[5] The deposition of Mr. Carruth and attachments are being filed under seal as per a confidentiality agreement with CGI.

[6] Plaintiff redacted the name of the vessel along with the names of the owner as a courtesy to protect the privacy of third parties not involved in the litigation.

only a small number of goods. http://www.fountaine-pajot.com/en/a-leading-company (Since 1983, FP delivered "over 2500 boats to date.")  As discussed above, FP has actively sought to distribute these goods in Florida.  This shows that despite not tallying a high number of units sold, FP is still significantly playing a role in the marine industry in Florida as well as the United States generally.

## II.  JURISDICTION OVER FOUNTAINE-PAJOT DOES NOT VIOLATE DUE PROCESS

To determine whether the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment, the Court need only find that FP has minimum contacts with Florida and that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Mutual Svc. Ins. Co. v. Frit Indust. Inc.,* 358 F.3d at 1319 (*citing Int'l Shoe Co. v. Washington,* 325 U.S. 310, 316 (1945))  See also, *Barriere v. Juluca*, 12-23510-CIV, 2014 WL 652831 (S.D. Fla. 2014).

> "In determining whether jurisdiction would comport with traditional notions of fair play   and    substantial justice, the court looks at: (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiffs interest in obtaining convenient   and   effective   relief,   (d)   the interstate judicial system's interest in obtaining the    most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies."

*Barriere*, 2014 WL 652831 (S.D. Fla. 2014) citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1276 (11th Cir.2002).

As the Court in *Barriere* noted, the Florida Supreme Court has recognized that, alone, proof of any single circumstance enumerated in Fla. Stat. §48.193 will not necessarily satisfy Due Process.  However, "the Supreme Court held that a court may assert jurisdiction over a foreign corporation 'to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state.'" *Barriere*, 2014 WL 652831 (S.D. Fla. 2014) citing *Goodyear Dunlop Tires Operations, S.A. v.*

8

*Brown*, 131 S.Ct. at 2851.  For a corporation to be found "at home"[7] within a forum state, the Supreme Court considers the location of its principal place of business or place of incorporation as the "paradigm." *Goodyear*, 131 S.Ct. 2846, 2853-54*; see also, Daimler AG v. Bauman*, 134 S.Ct. 746 (2014).  However, as the Court in *Barriere* astutely points out, "at home" can be read to mean "'instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit ... *on causes of action arising from dealings entirely distinct from those activities.'"  Barriere*, 2014 WL 652831 (S.D. Fla. 2014) citing *Daimler,* 134 S.Ct. at 761 *quoting Int'l Shoe Co. v. Washington*, 325 U.S. at 318.

The Florida Legislature through §48.181(3) has already provided a framework for what it means to be "at home" in the state of Florida.  *Daimler* and *Goodyear* need not and should not be read as being hostile towards established Florida law.  The Florida Legislature addressed when a corporation is "at home" in Florida by enacting §48.193(3).  FP has four distributors in the state through which it sells millions of dollars worth of tangible property and under Florida law is "conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in or carrying on a business or business venture in this state."  Surely, the intent of the Supreme Court in *Daimler* and *Goodyear* was not that these cases be interpreted in such a way as to lay waste to an entire body of Florida law.  Put another way, this Court would have to find Florida's Long Arm Statute and §48.181(3) unconstitutional as applied which is exactly what the Court in *Barriere* declined to do.

In this case, unlike *Daimler* the Defendant is continuously and purposefully availing itself of this forum directly.  FP sells millions of dollars worth of boats in Florida, sells replacement parts in Florida, markets to Americans in Florida, visits tradeshows and promotes its

---

[7] The term "at home" is, at best, nebulous.  However, the Supreme Court has not provided a rigid definition for what it means to be "at home" beyond the "paradigm" examples.  The courts must decide on a case by case basis what "at home" means.

brand through magazines in Florida.  Coupled with Florida's interest in overseeing the boating industry, this Court may exercise personal jurisdiction over this Defendant without running afoul of the Due Process Clause.

FP not only has shown that it has contacts within Florida sufficient to exercise jurisdiction over it, but also shown an intent to submit to the jurisdiction of Federal Courts in this country.  FP owns a trademark in the United States. See Trademark Electronic Search System Printout and Affidavit of Nicholas Gardies; and FP Response to Pls. RFP #7.  (Composite Exhibit 5)  In his affidavit of continued use/excusable nonuse, Mr. Gardies, an officer of FP, states: "The mark has been in continuous use in commerce for five consecutive years after the date of registration in the United States, and is still in use in commerce on or in connection with all the goods/services in the existing registration."  Mr. Gardies signed this affidavit in July 2014, presumably to maintain the Fountaine-Pajot trademark in the United States active.  If FP had no intention of enforcing this trademark throughout the United States, it strains reason to think of a reason why it would register and maintain it.  The only manner in which FP could enforce this trademark, in Federal Court, would be while submitting itself to the jurisdiction of that court in the United States.  This shows FP's willingness and manifest intent to avail itself of the protection of this country's laws in whatever state it may have to.  Otherwise, why go through the process of registration for its trademark.  On its website, the United States Patent and Trademark Office offers this among other reasons for registration of a trademark: "the ability to bring an action concerning the mark in federal court." www.uspto.gov/trademarks/basics/register.jsp Should the FP trademark be used without its permission in Florida, FP would enforce the trademark through the Federal Courts in Florida. Only now, where it is being called to defend itself in Federal Court for a defective and dangerous

10

product, FP not interested in being subject to the jurisdiction of United States' Federal Courts.

Finally, the nature of the yacht business is different than other high volume driven businesses. First, unlike a product that is sold in large quantities such as tires or automobiles, a luxury boat is not an everyday purchase for most people. This is not a business one would expect to have millions of units sold in Florida because the expense of these boats (upwards of $500,000.00) makes owning one possible for a small fraction of the population. Couple that with the geographic limitations of where you can store and use these boats, you have a business that is not volume driven. See Dep. J. Carruth, 57:21; 58:1-8; Ex. 11.

## III.  IN THE ALTERNATIVE, FP'S NATIONWIDE CONTACTS ARE SUFFICIENT FOR PERSONAL JURISDICTION

In the alternative, assuming FP is not subject to jurisdiction under Florida's long-arm statute, it may be haled into court pursuant to Federal Rule of Civil Procedure 4(k)(2). This case is brought pursuant to federal maritime law; therefore, if the Court concludes that FP is not subject to jurisdiction in any state, it may look to nationwide contacts. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218-19 (11th Cir. 2009); *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996). "General jurisdiction" requires an "appraisal of [FP's] activities in their entirety, nationwide and worldwide." *Daimler*, 134 S. Ct. at 762. FP has made itself at home through extensive contacts in the United States. It sells vessels through seven dealers throughout the United States – more than in any other country, excluding France. http://www.catamarans-fountaine-pajot.com/en/dealers; http://www.motoryachts-fountaine-pajot.com/en/dealers. Moreover, it has arranged exclusive financing through CGI Finance – a Maryland-based company – for dealers and customers in the United States. See Dep. J. Carruth, 25:9-15. As a result of these contacts, the Court may exercise jurisdiction over FP consistent with the Due Process Clause.

11

#### IV.  *BLUEWATER TRADING* IS DISTINGUISHABLE

FP relies heavily on a case originating in the Southern District of Florida, *Bluewater Trading LLC v. Fountaine-Pajot S.A., et. al.*, Case No. 07-61284 (S.D. Fla. 2008).  In *Bluewater* the district court found no basis for personal jurisdiction over FP.  The Eleventh Circuit affirmed that decision.  See *Bluewater Trading LLC v. Fountaine-Pajot S.A.,* Case No. 08-16824 (11th Cir. 2009.  Both the District Court and the Circuit Court agreed that insufficient contacts existed, however, neither court discusses the extent of sales and the number of dealers FP has in Florida.  See *Bluewater* Order (COHN) [D.E. 101] at p. 3.  Unlike here, nothing on the record in *Bluewater* established FP's increasing business activities within Florida.  In dismissing the plaintiff's case the District Court in *Bluewater* found that "the record shows no evidence of extensive...business activities between Fountaine and Willmar within the state of Florida.  The advertising that Fountaine places in magazines circulated in Florida is also of limited and passive nature, and cannot be seen as 'carrying on a business.'" Cohn Order [D.E. 101] at 9.  The Court makes no mention of *systematic and continuous sales* in conjunction with its sales and marketing efforts.  Here, the Court has before it ample evidence of its business dealings not only with FYG but other Florida dealers.  The Eleventh Circuit found that "the district court reviewed the evidence of Fountaine's contacts with the state and concluded that those contacts could not give rise to jurisdiction under the statute."  *Bluewater Trading LLC,* 335 Fed.Appx 905, 907 (11th Cir. 2009)  The Eleventh Circuit went on: "the evidence was that Fountaine did not directly sell vessels in Florida...[and] did not have a contract with Willmar."  *Id.* at 907.  In this case, as demonstrated above, Plaintiffs have shown a more than sufficient factual basis for this Court to exercise jurisdiction both under the Florida's Long Arm Statute and under the Due Process

Clause of the Fourteenth Amendment.[8]  Plaintiff has established the existence of a direct contract between FYG (and other Florida dealers) for the sale of FP boats in the Southeast United States.  See Dep. D. Sell, 10:5-16; Dep. D. Sell, 16:17-22.  It is also on the record that FYG themselves purchased a FP directly for $550,000.00, so at least on one occasion FP has sold directly into the State of Florida.  Dep. D. Sell, 26:13-15; 26: 17-25.  Further, it is undisputed that certain buyers took possession and store their vessels in Florida.  The Eleventh Circuit affirmed the District Court in *Bluewater*, however, the Court has before it now a more robust picture of the business operations of FP in Florida.

## V.  SERVICE OF PROCESS WAS CURED AND EFFECTED THROUGH THE HAGUE CONVENTION

FP asserts that service of process was insufficient under Fed. R. Civ. P. 12(b)(5).  Plaintiff served Defendant through Florida Yacht Group as an agent of FP.  However, in an abundance of caution, Plaintiff cured any perceived defect in service of process by serving the complaint through the Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters ("Hague Convention") using a translated copy of the complaint through a Hussier de Justice.  See Proof of Service. (Exhibit 7)

Under Fed. R. Civ. P. 4(m), the 120 day time limit does not apply to service of process abroad.

## VI. CONCLUSION

Fountaine-Pajot has sold *and will continue to sell* millions of dollars worth of boats in Florida.  FP has marketed for nearly a decade in Florida *and will continue to do so*.  FP has used the Miami International Boat Show and advertised in magazines to promote its brand here in

---

[8] Defendant will argue that "title passes to buyers in France or abroad."  This is a red herring.  Whatever clever mechanism for selling boats Defendant engages in, there can be no doubt that FP derives a financial benefit from the sale of boats in this state.  Ultimately when a buyer purchases a boat in Florida, the boat is delivered in Florida, deposits and payments are taken in Florida and make their way to FP via wire transfer.

13

Florida and nationally for nearly a decade *and will continue to do so.* FP has received and transmitted money by wire transfer to and from Florida *and will continue to do so.* Despite all of this, FP would ask, with nothing more than a self serving affidavit which ignores all of this, that the Court dismiss this case and oust an American citizen from her courts.

In *Barriere* the Court foresaw that to apply *Daimler* and *Goodyear* in a manner inherently irreconcilable with Florida's Long Arm Statute (and the *Stubbs* and *Meier* decisions) is to, in effect, obliterate our long arm statute. In the process, eradicating a legislatively enacted law and depriving Americans of their constitutional right to seek redress in the Courts of the United States. The result will be an inability to secure justice for the family Casey Schulman while Fountaine-Pajot continues to sell a dangerous product in Florida with no danger of being hauled into its courts for incidents that occur outside the United States.

For the reasons cited above, Plaintiff, David Schulman, as Personal Representative of the Estate of Casey Schulman, deceased, respectfully requests that the Court enter an order denying Defendant, Fountaine-Pajot, S.A.'s, motion to dismiss.

14

Respectfully submitted,

**THE LAW OFFICES OF ROBERT L. PARKS, P.L.**
799 Brickell Plaza, Suite 900
Miami, Florida 33131
Tel:     (305) 445-4430
Fax:     (305) 445-4431
Email:  gabe@rlplegal.com
            bob@rlplegal.com
By:/s/ Gabriel A. Garay
Gabriel A. Garay
Florida Bar No. 103303
Robert L. Parks
Florida Bar No. 61436

and

Christopher K. Todd, Esq.
Jennifer C. Collins, Esq. (Appearing *pro hac vice*)
**KELLOG, HUBER, HANSEN,**
**TODD, EVANS & FIGEL, P.L.L.C.**
1615 M Street NW, Suite 400
Washington, DC 20036
Tel:     (202) 326-7900
Fax:     (202) 326-7999
Email:  ctodd@khhte.com
            jcollins@khhte.com

*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing document was filed on August 7, 2014, using cm/ecf, with the Clerk who will forward copies to all counsel of record.

/s/ Gabriel A. Garay
Gabriel A. Garay
Florida Bar No. 103303

15